**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

LORI FISHER,                                    CV 11-111-M-JCL

                Plaintiff,

     vs.

                            ORDER

CONTINENTAL CASUALTY
COMPANY, and HARTFORD LIFE
AND ACCIDENT INSURANCE
COMPANY,

                Defendant.

_____

Before the Court are the parties' cross motions for summary judgment on

the merits of Plaintiff Lori Fisher's claim for an award of continued disability

benefits pursuant to a disability insurance plan governed by the Employee

Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  For the

reasons discussed, and after conducting a bench trial on the administrative record

before the Court, I conclude Fisher has not met her burden of proof to establish

her continued eligibility for disability benefits under the terms of the subject

ERISA plan, and this action is dismissed.

## I.  BACKGROUND

Fisher was insured under a long term disability income insurance plan ("the

Plan") issued by Defendant Continental Casualty Company (Continental) as a

benefit of her former employment with Stream International, Inc. In November of 2001, Fisher became disabled due to fibromyalgia and chronic fatigue syndrome. Through litigation Fisher secured an award of disability benefit payments under the Plan from Continental effective as of November 16, 2001. As a result of further litigation between Fisher and Continental, Continental later agreed to pay Fisher long term disability benefits through January 2009, and to continue the benefits thereafter as long as Fisher qualified for benefits under the provisions of the Plan.

Defendant Hartford Life and Accident Insurance Company (Hartford) is the current administrator of the Plan. In February of 2009, Hartford began to reevaluate Fisher's eligibility for continued disability benefits. Following its evaluation of Fisher's medical conditions and her resulting functional ability to work, Hartford informed Fisher by letter dated January 20, 2010, of its conclusion that she no longer qualified as disabled under the provisions of the Plan. And Hartford terminated Fisher's benefits as of January 21, 2010.

Fisher appealed Hartford's termination of her disability benefits. She provided Hartford with additional information in support of her asserted eligibility for benefits. Hartford, in turn, obtained further medical opinions as to Fisher's conditions and her ability to work. On June 11, 2010, Hartford denied Fisher's

appeal, and upheld the decision to terminate her disability benefits.  This litigation

ensued.

## II.  DISCUSSION

### A.  Legal Standards

Fisher commenced this action under ERISA at 29 U.S.C. § 1132(a)(1)(B)

challenging Hartford's decision to terminate her disability benefits.  Section

1132(a)(1)(B) authorizes a civil action to obtain insurance plan benefits as

follows:

> § 1132. Civil enforcement
> > (a) Persons empowered to bring a civil action
> > A civil action may be brought–
>
> > > (1) by a participant or beneficiary–
> >
> > > [...]
> >
> > > (B) to recover benefits due to him under the terms of his
> > > plan, to enforce his rights under the terms of the plan, or
> > > to clarify his rights to future benefits under the terms of
> > > the plan[.]

29 U.S.C. § 1132(a)(1)(B).

The parties stipulated that Hartford's decision to terminate Fisher's

disability benefits is subject to de novo review by this Court under section

1132(a)(1)(B).

> When conducting a de novo review of the record, the court does not give
> deference to the claim administrator's decision, but rather determines in the

first instance if the claimant has adequately established that he or she is disabled under the terms of the plan.

*Muniz v. Amec Construction Management, Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010).  The court may construe the provisions of an ERISA plan under the rules of interpretation normally applied to insurance policies.  *Lang v. Long-Term Disability Plan of Sponsors Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997).

Further, in cases involving the de novo standard of review, the claimant bears the burden of proof — by a preponderance of the evidence — to establish his or her entitlement to benefits under the provisions of the applicable plan. *Muniz*, 623 F.3d at 1294.  *See also Langlois v. Metropolitan Life Ins. Co.*, 2012 WL 1910020, *12 (N.D. Cal. 2012).  And the burden remains with the claimant even in situations where the claimant had previously been receiving disability benefits, but the plan administrator terminated those benefits — the burden does not shift to the administrator in those circumstances.  *Muniz*, 623 F.3d at 1296. Although evidence of a prior award of disability benefits may prove probative of whether a claimant is disabled, that prior award does not operate to bind or commit a plan administrator to continue paying the benefits indefinitely without periodic eligibility reevaluations.  *Muniz*, 623 F.3d at 1296-97.

The parties have further agreed to submit this matter on cross motions for the Court's resolution of any issues of fact by way of a bench trial on the administrative record. Dkt. 42 at 1-2. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999). The parties' motions for judgment require the court to "decide whether the plaintiff is disabled under the terms of the policy at issue." *Langlois*, 2012 WL 1910020 at *1 (citing *Kearney*, 175 F.3d at 1095). In conducting the bench trial on the record, the court must evaluate the persuasiveness of conflicting testimony, decide what facts are more likely true, and make findings of fact. *Kearney*, 175 F.3d at 1095. The bench trial on the record may "consist[] of no more than the trial judge []reading [the administrative record.]" *Id*. *See also Langlois*, 2012 WL 1910020 at *1.

In an ERISA case under 29 U.S.C. § 1132(a)(1)(B) where the plaintiff is entitled to a bench trial on the record, the parties' cross motions for judgment may be decided under Fed. R. Civ. P. 52 even if the parties styled their motions as ones for summary judgment.[1] *Lee v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2012 WL 664733, *2 n.4 (N.D. Cal. 2012). Rule 52(a)(1) provides that "[i]n an action tried on the facts without a jury [...], the court must

---

[1]Because Fisher is entitled to a bench trial on the merits of her claim for benefits, the traditional summary judgment standards and procedures under Fed. R. Civ. P. 56 are inapplicable. *See Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009).

find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).  *See Sullivan v. Deutsche Bank Americas Holding Corp.*, 2011 WL 4961973, *1 (S.D. Cal. 2011) (applying Rule 52 in de novo review of a plaintiff's entitlement to benefits under an ERISA plan).

Objective evidence of a claimant's functional capacity limitations caused by a medical condition carries more weight when the court is considering whether the claimant is disabled under the terms of an ERISA plan.  Although a claimant may not be required to produce objective evidence establishing the existence of the medical conditions of fibromyalgia or chronic fatigue syndrome, it is reasonable to require a claimant to produce objective evidence of how those conditions affect her functional capacity to perform work.  *O'Bryan v. Consol Energy, Inc.*, 2010 WL 935373, *6 (E.D. Ky. 2010).  *See also Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 839 (8th Cir. 2006) (fibromyalgia); *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322-323 (7th Cir. 2007) (requiring objective evidence of functional limitations caused by fibromyalgia and chronic fatigue).  "[T]he physical limitations imposed by the symptoms of [chronic fatigue syndrome or of fibromyalgia] do lend themselves to objective analysis." *Boardman v. The Prudential Ins. Co. of America*, 337 F.3d 9, 16 n.5 (1st Cir. 2003).

> "[T]his court draws a distinction between requiring objective evidence of the diagnosis, which is impermissible for a condition such as fibromyalgia that does not lend itself to objective verification, and requiring objective

evidence that the plaintiff is unable to work, which is allowed." *Denmark v. Liberty Life Assurance Co.*, 481 F.3d 16, 37 (1st Cir. 2007), vacated on other grounds, 566 F.3d 1 (1st Cir. 2009). Because it is permissible to require documented, objective evidence of disability, it was not inappropriate for Liberty's reviewers to rely on the lack of such documented evidence, or on the [video] footage that contradicted Cusson's reports of limitations, in making their recommendations.

*Cusson v. Liberty Life Assurance Co. of Boston* 592 F.3d 215, 227 (1st Cir. 2010).

Finally, where a court is conducting a de novo review of the record, the court may take into account that objective evidence of a claimant's functional limitations is more reliable and more convincing than subjective evidence of those limitations even when the subject ERISA plan does not require a claimant to produce that objective evidence. *Langlois*, 2012 WL 1910020 at *14.

### B. Findings of Fact and Conclusions of Law

Pursuant to Fed. R. Civ. P. 52(a)(1), the Court makes the following findings of facts and conclusions of law:

The parties agree that the governing provision of the Plan applicable to Fisher's eligibility to continue receiving disability benefits defines "total disability" as follows:

"Total Disability" means that, because of Injury [or] Sickness, the Insured Employee is:

(1) continuously unable to engage in *any occupation* for which the Insured Employee is or becomes qualified by education, training or experience; and

7

> (2) under the regular care of a licensed physician other than the
> Insured Employee.

Administrative Record - 801 (hereafter "A.R.") (emphasis added). This "any occupation" language has a "broad reach" rendering a claimant not disabled if the claimant can perform any job for which the claimant is reasonably qualified by education, training or experience.[2] *Pannebecker v. Liberty Life Assurance Company of Boston*, 542 F.3d 1213, 1219 (9th Cir. 2008) (quoting *McKenzie v. General Telephone Co. of California*, 41 F.3d 1310, 1317 (9th Cir. 1994)).

In February of 2002, one of Fisher's treating physicians, Bernadette M. Van Belois, M.D., reported that Fisher has fibromyalgia.[3] Dr. Van Belois stated the diagnosis was supported by findings of "16/18 tender points, sleep disturbance, diffuse myalgias, headaches, paraesthesias, dizziness, difficulties with memory and concentration, tremors and visual disturbances." A.R. 208. Dr. Van Belois went on to report that Fisher's fatigue impaired her ability to function, that Fisher

---

[2]The parties do not address the issue of whether this definition of "Total Disability" includes situations where a claimant is only able to engage in part-time work. Fisher does not argue that she could satisfy this "Total Disability" definition even if she were able to work part time, and Defendants do not argue that under the definition a claimant is not disabled if he or she could engage in any occupation even if only on a part-time basis. The parties do not identify any other provision of the Plan that imposes further parameters on a claimant's ability to engage in any occupation for purposes of satisfying the definition.

[3]Continental and Hartford do not dispute that Fisher suffers from both fibromyalgia and chronic fatigue syndrome.

napped and rested much of the day, and needed assistance with housework and shopping. Dr. Van Belois concluded, at that time, that the "severity of [Fisher's] symptoms render[ed] her totally and continuously unable to perform *her* occupation." A.R. 208 (emphasis added). Dr. Van Belois stated her medical opinion was based on her 1½-hour evaluation of Fisher, but she did not identify any objective evidence demonstrating Fisher's functional limitations, or render an opinion as to whether Fisher could engage in any other occupation.

Fisher states that in April of 2004, an Administrative Law Judge with the Social Security Administration issued a favorable decision awarding her social security disability benefits. Fisher contends that award supports her claim for benefits under the Plan at issue in this case. She also complains that Continental and Hartford did not obtain a copy of the Administrative Law Judge's opinion. But, Fisher did not place a copy of the decision in the administrative record of this case, nor has she provided the Court with a copy of the decision. Consequently, there exists no evidence in the record on which the Court could analyze the basis of the Social Security Administration's award of benefits.

Even if additional evidence of the Social Security Administration's decision were before the Court, it is important to note that benefit eligibility determinations made by the Social Security Administration are not binding on private disability insurers. *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914

F.2d 1279, 1286 (9th Cir. 1990). *See also Giordano v. Providence Health System in Washington*, 747 F. Supp. 2d 1137, 1143 (D. Alaska 2010) (citing *Madden*); and *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 16 n.5 (1st Cir. 2003). This is so, in part, because the standard for an award of disability benefits from the Social Security Administration is different from the standards applicable under private disability insurance plans, and because the Social Security Administration is obligated to afford greater weight to a treating physician's opinion whereas private disability insurers are not. *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1193 (C.D. Cal. 2008) (citing *Madden*). *See also Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 240-41 (1st Cir. 2010). And an award of benefits from the Social Security Administration that occurred several years prior to a private disability insurer's termination of benefits carries little weight, especially where the claimant has not provided any information as to the extent, if any, of the Social Security Administration's review of the claim for benefits in the years following the initial award. *Richards*, 592 F.3d at 241 n.11.

Fisher has neither provided any details regarding the basis for her award of social security disability benefits, nor demonstrated that the Social Security Administration has confirmed that initial award through subsequent or recent reviews of that claim. Consequently, the Court concludes Fisher's award of social security disability benefits in 2004 has little, if any, probative value to the issue of

whether she qualifies as disabled under the terms of the subject Plan as of January, 2010.

In April of 2007, Fisher responded to a questionnaire from Hartford. She reported her daily activities were unpredictable, in that on some days she could "barely function" beyond just getting dressed and having breakfast due to a lack of mental or physical energy, and sometimes she required assistance getting out of bed or to prepare meals. She also reported that on other days she could get up, shower, get dressed, and then either go for a walk, attend a meeting, clean the house, do laundry, or make meals. A.R. 157

On April 19, 2007, Dr. Van Belois answered a questionnaire from Hartford and reported that she found Fisher exhibited "18/18 tender points, muscle spasms - neck, upper back. early degenerative changes in hands." A.R. 159. Dr. Van Belois described Fisher's limitations as follows:

> cannot stand for prolonged periods due to lower extremity pain [...] must be able to get up and change positions at will or gets stiff [...] cannot use arms overhead repetitively [...] cannot [push or pull more than] 10 lbs. repetitively [...] cannot use arms/hands repetitively [...] must be able to take unscheduled breaks and lie down. Cannot tolerate competitive work environment or day.

A.R. 160. Dr. Van Belois opined that the referenced limitations would last indefinitely. Dr. Van Belois, however, did not identify an objective evidence in support of the limitations she described.

On January 16, 2009, Fisher provided answers to another questionnaire from Hartford. A.R. 135-141. In her addendum to that questionnaire, Fisher described her fibromyalgia condition as deteriorating, and stated she also suffered from torn cartilage in her hip. She stated she walks incorrectly to compensate for her hip problems which, in turn, has caused other complications and pain. She reported problems with pain in her head, and a lack of sleep causing her to be overwhelmed, impatient, and depressed. She stated these complications affect her ability to work. She also reported that she saw Dr. Van Belois every six months to help manage her fibromyalgia and osteoarthritis.

Dr. Van Belois provided Hartford with another statement in support of continued disability on February 5, 2009. At that time, Dr. Van Belois reported Fisher's subjective symptoms as "extreme fatigue, diffuse muscle & joint pain, memory and concentration impairment[,]" and noted physical findings to include "diffuse tender points, [and] decreased right hip [range of motion.]" A.R. 144. Dr. Van Belois opined that Fisher had limited functional capabilities in that she had a limited ability to sit, stand, or walk, was unable to lift and carry anything over 10 pounds in weight, and was limited in her ability to reach and use her hands. A.R. 145. Specifically, Dr. Van Belois reported that Fisher could sit, stand or walk less than one hour at a time, sit for a total of 4-6 hours a day, and stand or walk less than a total of 1 hour per day. *Id*. Dr. Van Belois stated these

12

limitations were "permanent/indefinite[.]" *Id*. Again, however, Dr. Van Belois did not provide objective evidence establishing that Fisher's abilities were limited in the manner she described. And she did not explain the basis on which she arrived at the referenced physical limitations.

Fisher's medical records from Dr. Van Belois' office for the period of time from September, 20, 2007, through July 15, 2009, were provided to Hartford and are contained in the administrative record. A.R. 480-483. Those records reflect that Fisher's fibromyalgia was flaring in January of 2008. In July of 2008, Dr. Van Belois administered an injection in Fisher's right trapezius "trigger point". Fisher was receiving chiropractic treatment that was helping with her pain, and Fisher felt that more regular exercise helped her fibromyalgia. In January of 2009, Fisher reported pain in her right hip and left foot, and Dr. Van Belois noted a decreased range of motion in Fisher's right hip. Fisher also reported to Dr. Van Belois that she experienced pain in her head.

In April and May of 2009, Hartford engaged an independent investigator to conduct video surveillance of Fisher's activities. The investigator obtained video surveillance of Fisher on April 21 and 22, and on May 16 and 17, 2009. The video shows Fisher briskly walking a dog without any apparent outward discomfort. The video shows Fisher driving a vehicle, and then shopping and walking around Costco pushing a cart for approximately 1 hour. While in Costco,

Fisher used her arms and hands to reach for items on the shelves, and lifted items and bent over to place them on a low-level cart. Fisher is also seen lifting a large box full of items out of her cart and placing it in her vehicle, and crawling in the back of her vehicle on her knees. The video also show Fisher engaging in various physical activities while attending a dog show on May 17, 2009. The video reflects that Fisher occupied herself with various activities from approximately 9:00 a.m. until 6:30 p.m. on May 17, 2009, without noticeable discomfort or any apparent physical limitations. The Court finds the video reflects Fisher engaging in physical activities, sitting, standing, walking, and using her arms and hands in a manner that is clearly inconsistent with the limitations described by Dr. Van Belois on February 5, 2009.

Limited video surveillance may be sufficient to demonstrate functional abilities that are inconsistent with a claimant's subjective reported limitations. *Dolan v. Prudential Ins. Co. of America*, 2012 WL 1669371, *13 (N.D. Cal. 2012). Short surveillance video over the course of four or five days can be sufficient to demonstrate a claimant's higher level of functional capabilities than what the claimant subjectively reported. *Bender v. Hartford Life Ins. Co.*, 2011 WL 3566483, *14-15 (N.D. Cal. 2011). Video footage provides objective evidence supporting a conclusion that a claimant's asserted pain and discomfort "does not rise to the level of disabling pain." *Bender*, at * 15 (quotation and

14

citation omitted). Therefore, the Court finds the video footage of Fisher's activities provides some objective evidence in favor of Hartford's decision to terminate her benefits.

In a letter dated October 22, 2009, Hartford requested further specific information from Fisher's medical care providers. Hartford stated its opinion in the letter that Fisher had:

> the ability to function up to 40 hours per week, in a capacity that includes standing/walking and/or sitting throughout the day, and; allows for full use of the upper extremities. Lifting/carrying will be limited to 0-10 pounds on a frequent basis, up to 30 pounds occasionally. Afforded will be the opportunity to change body positions/postures as needed for comfort (by walking, standing, or moving about).

A.R. 469. Hartford also requested each medical care provider to render an opinion as to whether Fisher had the ability to function as stated in Hartford's opinion.

Fisher's chiropractor, Richard Puchta, responded to Hartford's letter on November 15, 2009. A.R. 470-471. Dr. Puchta stated that he agreed with Hartford's opinion of Fisher's functional abilities, except that he disagreed with the number of hours she could work. Based on his clinical experience with Fisher through September 18, 2009, Dr. Puchta believed that Fisher could function as described by Hartford, but only up to 18 hours per week, and only up to 4 hours per day. Dr. Puchta clarified, however, that his opinion was based only on his May 13, 2008 notes of Fisher's visit reflecting that Fisher reported she is "often

sore two days after exert [sic] herself (she ran with dogs 5/11)." A.R. 471. Dr. Puchta also remembered Fisher making a similar statement at other times. Other than the information Fisher reported to him, Dr. Puchta did not reference any objective evidence in support of the limited number of hours he believed Fisher could work.

Dr. Van Belois responded to Hartford's letter on November 13, 2009. She disagreed with Hartford's assessment of Fisher's functional abilities stating as follows: "It is my medical opinion that Lori Fisher cannot tolerate a forty hour work week and would have absences for flares. My opinion is based on my knowledge of fibromyalgia and of Lori's case." A.R. 476. Dr. Van Belois's opinion, however, is conclusory in that she does not explain the grounds on which she concludes Fisher could not tolerate a 40-hour work week.

In November of 2009, Hartford obtained independent medical opinions from two physicians, Dr. Leela Rangaswamy and Dr. David Knapp. A.R. 445-457. Dr. Rangaswamy is Board Certified in Orthopaedic Surgery, and Dr. Knapp is Board Certified in Internal Medicine with a Sub Specialty Certificate in Rheumatology. They prepared a Peer Review Report dated November 19, 2009.

Dr. Rangaswamy reviewed Fisher's medical records and viewed Hartford's surveillance video of Fisher. Dr. Rangaswamy concluded that Fisher's "appropriate current maximum level of function would be full time work with no

restrictions or limitations." A.R. 446. Dr. Rangaswamy found no "documentation in the submitted data", and "no evidence of any objective findings to support an inability to work a 40-hour week without restrictions or limitations." A.R. 447.

Dr. Knapp prepared a 9-page report reviewing Fisher's medical records and Hartford's surveillance video. He similarly concluded Fisher was functionally capable of performing "full time work with no restrictions or limitations." A.R. 457. Dr. Knapp found that Fisher's medical records did "not document clinically significant objective medical, orthopedic, neurologic, or rheumatologic impairments that support any level of impairment." *Id*. In his opinion, the surveillance video showed Fisher "ambulating without evidence of gait abnormality or discomfort[, ... and that] [a]ll activities appear to be performed in a fluid and natural manner without antalgia or outward signs of distress." *Id*.

On December 30, 2009, Hartford obtained an Employability Analysis Report prepared by a Hartford Rehabilitation Case Manager. The report was based on Dr. Rangaswamy and Dr. Knapp's opinions, and on information Fisher provided to Hartford. The report noted several hundred occupations matching Fisher's functional capabilities, and focused on a representative sample of seven specific occupations that met Fisher's profile. The report stated that those "occupations exist in reasonable numbers in the local economy, use skills and/or

worker traits and habits [Fisher] possesses and [are] within her physical, mental, and cognitive abilities."  A.R. 431.

On January 20, 2010, Hartford sent a letter to Fisher informing her of its decision to terminate her disability benefits based on all the information available to it.  Hartford found its surveillance video of Fisher reflected that she possessed much greater functional capabilities than what Fisher had subjectively reported to Hartford.  Hartford's Medical Case Manager found Fisher to be capable of functioning up to 40 hours per week with limits only on her ability to lift weight.  Hartford took into account the opinions of Fisher's medical care providers, and of Dr. Rangaswamy and Dr. Knapp.  Hartford concluded that:

> the medical evidence and investigative information on file no longer supports that you are Disabled as defined by the policy and the evidence supports that you are capable of performing alternative occupations.

A.R. 426.  Hartford stated its decision was based on "the totality of the information" in the administrative record.

On March 31, 2010, Fisher appealed Hartford's decision to terminate her benefits, and provided Hartford with additional information in support of her appeal.  Fisher prepared a letter dated March 10, 2010, that described her daily struggles living with and managing her medical conditions, and coping with the pain, low energy levels, and depression.  But she stated that because of her

activities, exercise, stretching, physical therapy, and pool therapy, she had been able to work two days at less than 8 hours each day.  A.R. 679-682.

Fisher included a letter from Dr. Van Belois dated February 8, 2010, that noted Fisher has been honest, motivated to make improvements, and not malingering.  She stated Fisher "cannot tolerate an eight hour work day or [a] five day work week[, and concluded] she is unable to be gainfully employed in a full time capacity[.]"  A.R. 683.  Dr. Van Belois explained that Fisher would be unreliable at work due to flare-ups causing her to be absent from work, but she did not reference any objective evidence that supported her opinion of Fisher's functional capacity.

Fisher provided Hartford with a letter dated February 19, 2010, from her physical therapist, Pam Skonord, that concluded Fisher has good days, and bad days due to overexertion which causes fatigue and pain, but that Fisher has been able to work two days a week at less than 8 hours per day.  A.R. 684.

Dr. Puchta wrote a letter February 6, 2010, in support of Fisher's appeal. He stated Fisher cannot work a 40-hour week, but that she could occasionally work an eight-hour day followed by recovery time to deal with the pain and fatigue caused by overexertion.  A.R. 686.  Dr. Puchta, though, did not identify any objective evidence in support of his opinion of Fisher's limitations, and he noted he had not treated Fisher since September 18, 2009.

Fisher also submitted a letter from her dentist, Connie Small, D.D.S., dated February 18, 2010, that reported Fisher had numerous fractured teeth, tooth wear, and jaw pain due to a clenching and grinding problem caused by pain. A.R. 690. Fisher has not, however, presented any evidence demonstrating that these conditions translate into any functional limitations on her ability to work.

By letter dated February 26, 2010, Chare Largent, a long-time friend of Fisher, reported on the improvements Fisher had made over the years through the use of the disability benefits awarded by Hartford. Ms. Largent also confirmed that Fisher had been working 2 days a week. A.R. 691. Ms. Largent did not provide any further objective information demonstrating Fisher's functional limitations.

Finally, Fisher provided supporting letters from her brother, Thomas Carr, and her father, Robley Carr. Both letters commend Fisher on her education, strong work ethic, and her desire to work and be productive. Thomas and Robley both described Fisher's pain and fatigue due to overexertion, and the recovery time she needs after over exerting. They do not, however, provided any objective information as to Fisher's actual functional capabilities or limitations as a result of Fisher's conditions. A.R. 693-695.

During the process of Fisher's appeal, Hartford obtained two additional independent Multidisciplinary Panel Review opinions from Dr. Paul Howard and

Dr. Thomas Lazoff, dated June 1 and June 2, 2010, respectively. Dr. Howard is a member of the American Board of Internal Medicine with a Subspecialty Board in Rheumatology. Dr. Lazoff is Board Certified by the American Board of Physical Medicine and Rehabilitation, Board Certified by the American Board of Pain Medicine, a Diplomat of the American Academy of Physical Medicine and Rehabilitation, a Diplomat of the Association of Academic Physiatrists, and a Fellow of both the American Academy of Disability Evaluating Physicians and the Physiatric Association of Spine, Sports, and Occupational Rehabilitation.

Dr. Howard reviewed a significant volume of Fisher's medical records and the surveillance video obtained by Hartford. Dr. Howard found that "[f]rom a rheumatology perspective, [Fisher] has no evidence of any functional impairment based on the absence of any focal neurologic or musculoskeletal abnormalities[,]" but that Fisher does have some limited range of motion in her right hip. A.R. 656. Dr. Howard noted the presence of tender points, but no other range of motion loss, weaknesses, or abnormalities. He concluded Fisher "is capable of [full time] light duty activity [...] with a capability of standing frequently, walking frequently and lifting up to 10 pounds frequently and 25 pounds occasionally." *Id*. He found no evidence of any limitations on her ability to use her hands, on her ability to reach with her arms, or on her ability to bend or stoop. *Id*.

Dr. Lazoff also reviewed extensive medical records from numerous medical care providers, and the surveillance video. Dr. Lazoff noted the video showed Fisher engaging in relatively extensive activities, and functioning at a much higher level than typically reported. Based on his review of all the records and information provided to him, Dr. Lazoff identified various accommodations Fisher would need, and various limitations on her abilities to lift, push, pull, stand, and walk. Nonetheless, Dr. Lazoff concluded Fisher was capable of performing full time light duty work. A.R. 646-647.

By letter dated June 11, 2010, Hartford notified Fisher of its decision to deny her appeal. Hartford took into consideration all of the additional materials and information Fisher submitted on appeal, and the opinions of Dr. Lazoff and Dr. Howard. Hartford concluded on appeal that the totality of the evidence supported a conclusion that Fisher "has function that would not preclude her from performing alternative work activity on a full time basis from a physical standpoint." A.R. 748. Hartford has never questioned the presence of Fisher's fibromyalgia and chronic fatigue conditions, and the symptoms and discomfort caused by those conditions, but in upholding its decision on appeal it concluded that those conditions and symptoms "in and of themselves do not establish[,] based on the totality of the medical findings of fact, Ms. Fisher's inability to perform full time work activity." A.R. 479.

As a matter of law, the "courts are not required to 'accord special weight to the opinions of a claimant's physician.'" *Muniz v. Amec Construction Management, Inc.*, 623 F.3d 1290, 1297 (9th Cir. 2010) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). The treatment provided by a treating physician to a claimant, and his or her opinion of a claimant's functional capacities are not dispositive of the claimant's capacity to work. *See e.g. Geiger v. Hartford Life Ins. Co.*, 348 F. Supp. 2d 1097, at 1111-12 (E.D. Cal. 2004). Nor is there a heightened burden of explanation required when a treating physician's opinion is rejected. *Nord*, 538 U.S. at 831.

Furthermore, a disability decision may properly be based on independent medical opinions from doctors selected by the ERISA plan administrator, even where those opinions are based only upon a review of a claimant's medical records and where those doctors did not personally examine the claimant. *See Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1192 (C.D. Cal. 2008) (citing *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004)); *Braddock v. Baker Hughes Inc. Long Term Disability Plan*, 461 F. Supp. 2d 490, 502 (S.D. Miss. 2006) (citing cases).

Here, the only opinions provided by Fisher's treating medical care providers are those of Dr. Van Belois and Dr. Puchta discussed above. The Court finds those opinions are not sufficiently supported by objective evidence that would

afford those opinions greater weight and render them more convincing. The Court does not afford those opinions any special deference over the opinions of Dr. Rangaswamy, Dr. Knapp, Dr. Howard, and Dr. Lazoff even though those four physicians' opinions are based only upon a review of Fisher's medical records without personally examining Fisher. Those four physicians note the absence of objective medical evidence that would warrant a finding of any restrictions or limitations on Fisher's functional capacity and that would preclude her from engaging in full time work.

Based on all of the forgoing, and having conducted a bench trial based on a de novo review of the administrative record, the Court concludes Fisher is not eligible for a continued award of benefits under the Plan. Specifically, Fisher has failed to satisfy her burden of proof to establish, by a preponderance of the evidence, that it is more likely than not that she is "continuously unable to engage in any occupation for which [she] is or becomes qualified by education, training or experience[.]" As noted throughout this decision, Fisher has failed to identify sufficient objective evidence of any limitations on her functional ability to engage in work activities. The subjective reports of Fisher's limitations contained in the administrative record do not outweigh the video footage of her functional abilities and the opinions of the four physicians obtained by Hartford. Therefore, Fisher is not eligible to recover ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B).

Accordingly, **IT IS HEREBY ORDERED** that Fisher's motion for judgment is **DENIED**, Continental and Hartford's motion for judgment is **GRANTED**, and this action is **DISMISSED**.

DATED this 30th day of July, 2012.

Jeremiah C. Lynch
United States Magistrate Judge